**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LOWELL KERN and JOSEPH BALL, individually and on behalf of all others similarly situated,<br><br>                    Plaintiffs,<br><br>v.<br><br>STUBHUB, INC.,<br><br>                    Defendant. | Case No.:<br><br><br>**CLASS ACTION COMPLAINT**<br><br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Lowell Kern and Joseph Ball ("Plaintiffs"), individually and on behalf of all others similarly situated, by and through their undersigned counsel, bring this class action complaint against StubHub, Inc. ("StubHub" or "Defendant"). Plaintiffs allege the following upon information and belief based on the investigation of counsel, except as to those allegations that specifically pertain to Plaintiffs, which are alleged upon personal knowledge.

## NATURE OF THE ACTION

1.      Defendant has been improperly charging consumers on their website in violation of the New York Arts and Cultural Affairs Law § 25.07(4).

2.      When ticket purchasers visit Defendant's website https://www.stubhub.com to buy an admission ticket to an event, they are initially quoted one price, only to later be shown the true total ticket price, which includes an additional "Fulfillment and Service Fee."

3.      These added fees are only presented *after* consumers select their ticket option and pass through multiple screens in the purchase process. Moreover, Defendant's website triggers a

10-minute counter upon initial ticket selection, which is set to apply pressure on purchasers to move fast and complete their purchase.

4.      In an effort to stop this type of business practice, New York State passed the Arts and Cultural Affairs Law, which provides that a "platform that facilitates the sale or resale of tickets… shall disclose the total cost of the ticket, inclusive of all ancillary fees that must be paid in order to purchase the ticket." § 25.07(4)

5.      The "disclosure of the total cost and fees shall be displayed in the ticket listing *prior to* the ticket being selected for purchase." *Id.* (emphasis added). § 25.07(4) further states that "*[t]he price of the ticket shall not increase during the purchase process*." *Id.* (emphasis added). This latest version of the law went into effect August 29, 2022.[1]

6.      Arts and Cultural Affairs Law § 25.07(4) provides that a "platform that facilitates the sale or resale of tickets". . . shall disclose in a clear and conspicuous manner the portion of the ticket price stated in dollars that represents a service charge, or any other fee or surcharge to the purchaser." *Id.*

7.      As a result of Defendant's failure to adhere to these disclosure standards, Plaintiffs seek relief in this action individually, and on behalf of all other ticket purchasers of Defendant for actual and/or statutory damages in the amount of fifty dollars per violation,[2] reasonable attorneys' costs and fees, and injunctive relief under New York Arts and Cultural Affairs Law § 25.33.

---

[1] *See* N.Y. Arts & Cult. Aff. Law § 25.07
[2] *See* New York Arts and Cultural Affairs Law § 25.34

## PARTIES

8.      Plaintiff Lowell Kern is an individual consumer who, at all times material hereto, was a citizen and resident of New York. Plaintiff purchased an admission ticket to the 2023 Eagles concert at Madison Square Garden through Defendant's website, https://www.stubhub.com/.

**Eagles - The Long Goodbye**

Madison Square Garden, New York

07/09/2023 (event local time)

ℹ Event times are subject to change. Check with the venue.

| | |
|---|---|
| Delivery | Mobile Tickets |
| Quantity | 2 |
| Section | 109 |
| Row | 14 |
| Seats | 5 - 6 |
| Price per ticket | $136.30 |
| Quantity | x 2 |
| Subtotal | $272.60 |
| tax | $0.00 |
| Total fees | + $80.74 |
| **Total** | **$353.34** |

*Mr. Kern's StubHub ticket confirmation*

The transaction flow process he viewed on Defendant's website was substantially similar to that depicted in *Figures 1 through 9* in this complaint. When Mr. Kern first visited Defendant's website to purchase a ticket, he was initially quoted a fee-less price of $272.60. Only after selecting his seating, then clicking through multi-pages, was he then presented with an additional $80.74 in fees. These fees amount to nearly 23% of the total ticket price paid by Mr. Kern.

9.      Plaintiff Joseph Ball is an individual consumer who, at all times material hereto, was a citizen and resident of New York. Plaintiff purchased an admission ticket to a 2023 New York Mets game at Citi Field through Defendant's website, https://www.stubhub.com/.



*Mr. Ball's StubHub ticket confirmation*

The transaction flow process he viewed on Defendant's website was substantially similar to that depicted in *Figures 1 through 9* in this complaint. When Mr. Ball first visited Defendant's website to purchase a ticket, he was initially quoted a fee-less price of $157. Only after selecting his seating, then clicking through multi-pages, was he then presented with an additional $43.10 in fees.

4

10.     Defendant StubHub, Inc. is a Delaware corporation with its principal place of business in New York, NY. StubHub, Inc. owns and operates the website http://www.stubhub.com.

## JURISDICTION AND VENUE

11.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 Class members; the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs; and at least one Class member is a citizen of a state different from Defendant.

12.     Defendant sold at least 100,000 tickets through its website during the applicable class period and is liable for a minimum of fifty dollars in statutory damages for each ticket sold.

13.     This Court has personal jurisdiction over Defendant because Defendant directed their business via the sale of through their website to consumers in New York, including to Plaintiffs. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff Kern and Plaintiff Ball are residents of New York County.

## NEW YORK ARTS & CULTURAL AFFAIRS LAW

14.     The New York enacted Arts & Cultural Affairs Law § 25.07(4), effective on August 29, 2022, provides that "[e]very operator or operator's agent of a place of entertainment, any licensee or other ticket reseller, or platform that facilitates the sale or resale of tickets … shall disclose the total cost of the ticket, inclusive of all ancillary fees that must be paid in order to purchase the ticket, and disclose in a clear and conspicuous manner the portion of the ticket price stated in dollars that represents a service charge, or any other fee or surcharge to the purchaser. Such disclosure of the total cost and fees shall be displayed in the ticket listing prior to the ticket

being selected for purchase." *Id*. And "[t]he price of the ticket shall not increase during the purchase process." *Id*.

15.     In response to ticketing websites' communications to the State of New York's Division of Licensing Services as to the scope of the law, the Division of Licensing Services clarified: "the ticket purchasing process begins once a consumer visits a ticket marketplace and ***first sees a list of seat prices***." *See* N.Y. Dep't of State, Div. Licens. Servs., Request for Additional Guidance – New York State Senate Bill S.9461, attached hereto as Exhibit A, at 1 (emphasis added).

16.     The Division of Licensing Services added that "[f]rom the moment the prospective purchaser assesses the [] ticket lists through the final payment … there should be no price increases to the purchaser for the ticket itself." *Id.* "When a prospective purchaser selects a ticket with full disclosure of the ticket price, the purchaser should not then have to search for the total price of the ticket as the purchaser proceeds through the purchasing process, it should continue to be readily available to the purchaser." *Id.* at 2 (emphasis added).

17.     The statute does not speak to any purchasing limitations. By all accounts, the statute applies to: (i) New York purchasers of tickets to a New York based event, (ii) New York purchasers of tickets to a non-New York based event, and (iii) non-New York purchasers of tickets to a New York event.

## COMMON FACTUAL ALLEGATIONS

### Defendant's Checkout Process

18.     When     a     prospective     purchaser     visits     Defendant's     website, https://www.stubhub.com to purchase a ticket to an event, they are initially prompted with ticket seating options and a corresponding price for each ticket. *See Figure 1:*



*Figure 1*

19.     *Figure 1* depicts the sampled purchase, for demonstration purposes only, of the first page a purchaser is presented with when going to buy a ticket.

20.     Next, purchasers are presented with the ticket price plus an added notation in fine print indicating the ticket price includes an added fee.  No further details regarding the nature of the fee is presented at this stage. *See Figure 2.*



*Figure 2*

21.     Purchasers are then immediately presented with a sense of urgency and scarcity with a large pop-up that appears at the very front and center of the screen advising the person they must complete their purchase within 10 minutes. *See Figure 3.*



*Figure 3*

8

22.     After purchasers click "Start," they are told their price is locked and the clock starts counting down. *See Figure 4.*



## You have 10 minutes to complete your purchase

The price of your tickets will be locked during this time



Start

*Figure 4*

23.     Purchasers are then prompted to confirm the quantity of tickets they want to purchase. *See Figure 5.*



*Figure 5*

24.     Next, purchasers are shown a list of recent orders for the event, the number of people who viewed the event in the past hour, how fast tickets to the event are selling, and the price average for the tickets selected over the past seven days, all displayed in various shapes and colors. The implication is that consumers should act fast and press "Continue." *See Figure 6.*



*Figure 6*

25.     Purchasers who spend time reading the contents presented to them on this page or take too long to press "Continue" are presented with a pop-up reminding them they are on the clock and "Prices may rise or tickets may not be available after this time." *See Figure 7.*



*Figure 7*

26.    Furthermore, a person must not let the clock strike zero, or else they risk losing the entire purchase altogether, with the following pop-up triggering:



*Figure 8*

27.    Finally, purchasers who click "Continue" are taken to the order summary page. *See Figure 8*. On this final part of the checkout process, Defendant requests payment details and provides the final price.  The final price references the "Fulfillment and Service Fee" And for the first time lists the dollar amount of the fee. *See Figure 9*.



*Figure 9*

11

28.     It is only on this final step that the true "Total Price" emerges for the first and only time in the ticket purchase process.

**FTC's Report on Ticket Pricing Manipulation**

29.     "Dark patterns" are deceptive tactics and tricks that manipulate consumers into making choices they would not otherwise have made. The Federal Trade Commission ("FTC") released a report on this deceptive behavior[3], in which they called attention to specific practices such as: (1) scarcity, (2) urgency, (3) obstruction, (4) information hiding, and (5) interface interference.

30.     Defendant engages in the practice of scarcity by creating urgency for the purchaser to buy via a false sense of high demand. *See supra* ("757 people viewed this event in the past hour" and "This event is selling fast for the New York Knicks").

31.     Defendant engages in the practice of urgency by creating pressure for the purchaser to buy immediately by showing a fake countdown clock that resets. See supra. Defendant further engages in this practice by indicating to purchasers who are moving too slowly through that purchase process that prices may rise or tickets may not remain available if they do not act. *See supra.*

32.     Defendant engages in the practice of obstruction by preventing purchasers from easily comparing prices by listing the ticket price without disclosing the true overall cost. *See supra* (requiring consumers to go through a multi-step process and pop-ups just to see the true total price).

---

[3] *Bringing Dark Patterns to Light*, FEDERAL TRADE COMMISSION (Sept. 2022), https://www.ftc.gov/system/files/ftc_gov/pdf/P214800%20Dark%20Patterns%20Report%209.14.2022%20-%20FINAL.pdf (last visited January 30, 2024).

33.    Defendant engages in the practice of information hiding by adding hidden fees or other charges during the purchase process. *See supra* ("Fulfillment and Service Fee" presented only on final page of purchase process).

34.    Defendant engages in the practice of interface interference by employing styles and designs to focus consumers' attention on one thing in other to distract, and misdirect, their attention from another. *See supra*, e.g., (placing the countdown timer at the top in larger font than other items on the screen and highlighting the product's scarcity in pink, contrasting text).

35.    Defendant knowingly engages in these dark patterns to lure consumers into purchasing tickets that ultimately include junk fees via an added "Fulfillment and Service Fee." Despite having the ability to properly portray the true total cost of a ticket up front, including any additional fees, Defendant systematically and intentionally misrepresents what Defendant will ultimately charge consumers.

36.    That is precisely the type of deceptive behavior that the FTC admonishes, and the New York State Legislature has acted against.

**Compliance With New York Arts and Cultural Affairs Law § 25.07(4).**

37.    Certain ticket sellers' websites, in contrast to StubHub, appear to comply with ACAL. Ticket reseller Eventbrite, Inc. ("Eventbrite") presentation of fees on their website https://www.eventbrite.com/ is an example of a business that is in compliance with the New York Arts and Cultural Affairs Law § 25.07(4).

38.    As soon as a purchaser is prompted to select their ticket type, they are presented with the ticket price, inclusive of fees. *See Figure 10*.



*Figure 10*

39.     Finally, the purchaser arrives at the checkout page, ready to complete their purchase, and is shown the same ticket price presented on the prior page. *See Figure 11*.



*Figure 11*

40.     In contrast to Defendant's presentation of ticket pricing, at no point during the multi-step purchase process presented by Eventbrite did the ticket price displayed to the buyer change. It remained consistent from the first point of selection through to checkout, in compliance with New York Arts and Cultural Affairs Law § 25.07(4).

41.     Additionally, the American Museum of Natural History ("AMNH") serves as another example of ticket fees should be presented to comply with the statute.

42.     When a purchaser visits the American Museum of Natural History ("AMNH") website at https://www.amnh.org to purchase a ticket, they are initially prompted to select the type and quantity of tickets, with a price displayed. *See Figure 12*.



*Figure 12*

43.     Thereafter, a purchaser is prompted to select the date and time of their visit, with the price display remaining the same as it was during the initial step in the purchase process. *See Figure 13*.



*Figure 13*

44.     Next, the purchaser is asked to review their cart to confirm their ticket details. *See Figure 14.*





*Figure 14*

45.     Finally, the purchaser arrives at the checkout page, ready to complete their purchase. *See Figure 15* .

## Checkout



*Figure 15*

46.     In contrast to Defendant's presentation of ticket pricing, at no point during the multi-step purchase process presented by AMNH, did the ticket price displayed to the buyer change. It remained consistent from the first point of selection through to checkout, in compliance with New York Arts and Cultural Affairs Law § 25.07(4).

## CLASS ACTION ALLEGATIONS

47.     Plaintiffs bring this action pursuant to Rule 23 of the Federal Rules of Civil Procedure, individually and on behalf of the following Class:

Purchasers of tickets through Defendant's website http://www.stubhub.com who were subjected to a ticket sales process which violated ACAL.

48.     Plaintiffs also seek certification of Subclass, defined as follows:

All New York residents who purchased tickets through Defendant's website to a New York event based on the effective date of the statute  (the "New York/New York").

17

All New York residents who purchased tickets through Defendant's website to a non-New York event based on the effective date of the statute (the "New York/Elsewhere").

All non-New York residents who purchased tickets through Defendant's website to a New York event based on the effective date of the statute (the "Elsewhere/New York").

49.     Specifically excluded from the Class are Defendant's, its officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint venturers, or entities controlled by Defendant, and their heirs, successors, assigns, or other persons or entities related to or affiliated with Defendant and/or its officers and/or directors, the judge assigned to this action, and any member of the judge's immediate family.

50.     Plaintiffs reserve the right to amend the Class definition above if further investigation and/or discovery reveals that the Class should be expanded, narrowed, divided into subclasses, or otherwise modified in any way.

51.     This action may be certified as a class action under Federal Rule of Civil Procedure 23 because it satisfies the numerosity, commonality, typicality, adequacy, and superiority requirements therein.

52.     <u>Numerosity (Rule 23(a)(1))</u>: The Class is so numerous that joinder of all Class members is impracticable. Although the precise number of such persons is unknown, and the facts are presently within the sole knowledge of Defendant, Plaintiffs estimate that the Class is comprised of hundreds of thousands, or more, Class members. The Class is sufficiently numerous to warrant certification. The exact number of Class Members is in the possession and control of Defendant.

53.     <u>Typicality of Claims (Rule 23(a)(3))</u>: Plaintiffs, like the other customers of Defendant, have been subjected to Defendant's deceptive pricing disclosure practices. Plaintiffs are members of the Class and their claims are typical of the claims of the members of the Class.

The harm suffered by Plaintiffs is similar to that suffered by all other Class members that was caused by the same misconduct by Defendant.

54.     <u>Adequacy of Representation (Rule 23(a)(4))</u>: Plaintiffs will fairly and adequately represent and protect the interests of the Class. Plaintiffs have no interests antagonistic to, nor in conflict with, the Class. Plaintiffs have retained competent counsel who are experienced in consumer and commercial class action litigation and who will prosecute this action vigorously.

55.     <u>Superiority (Rule 23(b)(3))</u>: A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Because the monetary damages suffered by individual Class members is relatively small, the expense and burden of individual litigation make it impossible for individual Class members to seek redress for the wrongful conduct asserted herein.  If Class treatment of these claims is not available, Defendant will likely continue its wrongful conduct, will unjustly retain improperly obtained revenues, or will otherwise escape liability for its wrongdoing as asserted herein.

56.     <u>Predominant Common Questions (Rule 23(a)(2))</u>: The claims of all Class members present common questions of law or fact, which predominate over any questions affecting only individual Class members, including:

a.     Whether Defendant failed to disclose the total cost of the ticket, including all ancillary fees, prior to the tickets being selected for purchase in violation of New York Arts & Cultural Affairs Law § 25.07(4);

b.     Whether the displayed price of Defendant's tickets increases during the purchase process in violation of New York Arts & Cultural Affairs Law § 25.07(4); and

c.     Whether Defendant failed to disclose its service charge in a clear and conspicuous manner in violation of New York Arts & Cultural Affairs Law § 25.07(4).

57.     Plaintiffs know of no difficulty which will be encountered in the management of this litigation which would preclude its maintenance as a class action.

58.     The prosecution of separate actions by individual members of the Class would run the risk of inconsistent or varying adjudications and establish incompatible standards of conduct for Defendant. Prosecution as a class action will eliminate the possibility of repetitious and inefficient litigation.

59.     Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

60.     Given that Defendant has not indicated any changes to its conduct, monetary damages are insufficient and there is no complete and adequate remedy at law.

## CAUSES OF ACTION

### COUNT I
### NEW YORK ARTS & CULTURAL AFFAIRS LAW§ 25.07
### (On Behalf of Plaintiffs and All Class Members)

61.     Plaintiffs repeat and re-allege each and every factual allegation contained in paragraphs 1-7 and 18-60, as if fully set forth herein.

62.     Plaintiffs bring these claims individually and on behalf of all Class members against Defendant.

63.     Pursuant to N.Y. Arts & Cult. Aff. Law § 25.07(4), Defendant is a "platform that facilitates the sale or resale of tickets."

64.     Pursuant to N.Y. Arts & Cult. Aff. Law § 25.07(4), Defendant had a statutory obligation to "disclose the total cost of the ticket, inclusive of all ancillary fees that must be paid in order to purchase the ticket, and disclose in a clear and conspicuous manner the portion of the ticket price stated in dollars that represents a service charge, or any other fee or surcharge to the purchaser" at the first point that ticket prices are displayed on their website.

65.     Defendant, through their failure to disclose the "total cost of a ticket, inclusive of all ancillary fees that must be paid in order to purchase the ticket" after a ticket is selected, as depicted in *Figures 1 through 9* of this Complaint, have violated New York Arts & Cultural Affairs Law § 25.07(4).

66.     Moreover, Defendant violated New York Arts & Cultural Affairs Law § 25.07(4) by increasing the total cost of its tickets during the purchase process, as depicted in *Figures 1 through 9* of this Complaint.

67.     Furthermore, Defendant violated New York Arts & Cultural Affairs Law § 25.07(4) by failing to "disclose in a clear and conspicuous manner the portion of the ticket price stated in dollars that represents a service charge, or any other fee or surcharge to the purchaser," as depicted in *Figures 4 and 5* of this Complaint.

68.     Defendant's "Fulfillment and Service Fee" is an "ancillary fee[] that must be paid in order to purchase the ticket." N.Y. Arts & Cult. Aff. Law § 25.07(4).

69.     Plaintiffs purchased tickets through Defendant's website and were forced to pay Defendant's "Fulfillment and Service Fee" in order to secure their tickets. Plaintiffs were harmed by paying this added charge, even though that total cost was not disclosed to Plaintiffs at the beginning of the purchase process, and therefore, is unlawful pursuant to New York Arts & Cultural Affairs Law § 25.07(4).

70.     Indeed, this is precisely the type of pricing gimmick the statute was designed to prevent. The Division of Licensing Services, in response to an inquiry from ticketing websites about the scope of the statute, stated clearly that "the ticket purchasing process begins once a consumer visits a ticket marketplace and first sees a list of seat prices" and that "[f]rom the moment the prospective purchaser assesses the [] ticket lists through the final payment … there

should be no price increases to the purchaser for the ticket itself." .See N.Y. Dep't of State, Div.

Licens. Servs., Request for Additional Guidance – New York State Senate Bill S.9461, attached

hereto as Exhibit A, at 1.

71.     Plaintiffs were also harmed by paying this "Fulfillment and Service Fee" charge,

since it was not clearly and conspicuously disclosed on the final checkout page, and therefore, is

unlawful pursuant to New York Arts & Cultural Affairs Law § 25.07(4).

72.     Plaintiffs, on behalf of themselves and all class members, seek to enjoin the

unlawful acts and practices described herein, to recover actual damages or fifty dollars, whichever

is greater, and reasonable attorneys' fees. *See* N.Y. Arts & Cult. Aff. Law § 25.33.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of all others similarly situated,

seeks judgment against Defendant, as follows:

(a) For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure
and naming Plaintiffs as representative of the Class and Plaintiffs' attorneys as Class
Counsel to represent the Class;

(b) For an order declaring that Defendant's conduct violates the statute referenced herein;

(c) For an order finding in favor of Plaintiffs and the Class;

(d) For compensatory and statutory damages in amounts to be determined;

(e) For prejudgment interest on all amounts awarded;

(f) For an order of restitution and all other forms of equitable monetary relief;

(g) For injunctive relief as pleaded or as the Court may deem proper; and

(h) For an order awarding Plaintiffs and the Class their reasonable attorneys' fees and
expenses.

## <u>DEMAND FOR TRIAL BY JURY</u>

Plaintiffs demand a trial by jury of all issues so triable.

Dated: February 6, 2024

**LEVI & KORSINSKY, LLP**

By: *<u>/s/ Mark S. Reich</u>*
Mark S. Reich (MR-4166)
Eduard Korsinsky (EK-8989)
Courtney E. Maccarone (CM-5863)
33 Whitehall Street, 17th Floor
New York, NY 10004
Telephone: (212) 363-7500
Facsimile: (212) 363-7171
Email:  mreich@zlk.com
         ek@zlk.com
         cmaccarone@zlk.com

*Counsel for Plaintiffs*

23